CRAFT *v.* ARMSTRONG.

4-5960 141 S. W. 2d 39

Opinion delivered May 20, 1940.

*Horace Sloan,* for appellant.

*Frierson & Frierson,* for appellee.

MEHAFFY, J. This action was instituted by J. Q. Armstrong and Bryan Armstrong in the Craighead chancery court against the appellant, J. L. Craft, to set aside and cancel a decree of confirmation by the State of Arkansas, and to cancel and annul the deed from the State Land Commissioner, and to quiet and confirm title to the lands described in appellees, upon the payment by them of such sums as the court may direct by way of redemption. They called their complaint "Bill of Review and suit to quiet title."

The State of Arkansas by its attorney general waived service, summons and process, and entered its appearance in the suit and consented to reopening of the decree that the matter might be heard either in vacation or in term time before the chancellor, waived notice of taking depositions or other evidence, stating that the sole desire of the State of Arkansas is that justice may be done in regard to the subject matter set out in the pleading.

The appellant filed motion to strike out or dismiss the bill of review portion of the pleading.

The court denied the motion of appellant, and exceptions were saved. Appellant then filed a motion to strike the paragraph with reference to bankruptcy from the bill, which motion was also denied and exceptions saved.

Appellant then filed answer denying all the material allegations of the complaint, and pleading the confirmation under act 296 of the acts of 1929, and alleging that the suit to quiet title was not brought within six months, alleging the payment of taxes; prayed that plaintiffs' complaint be dismissed and that the defendant in his cross-complaint have judgment against plaintiffs for $650.

Appellees then filed answer to the cross-complaint denying the material allegations and offering to repay to the appellant any taxes or special assessments that he may have paid.

The parties then entered into a stipulation that the following records might be introduced by either party instead of introducing depositions:

"1. Copy of the record of quorum or levying court during the year 1918. 2. Copy of record of a list and notice of sale of lands delinquent for the year 1918, Craighead county, Lake City district, covering the land in controversy. 3. Copy of record of delinquent lands sold to state for that tax sale as to this particular tract. 4. Copy of real estate tax book, Lake City district, Craighead county, for 1918, which on the back of the volume is labeled 'R. E. A.'ment 1918, Craighead county, Lake City Dist.' No separate real estate assessment book for that year can be found. 5. Copy of confirmation decree of the chancery court for the Lake City district of Craighead county, No. 2073, recorded in Chancery Record 7, pages 434, 441 at Lake City. It is agreed that it is not necessary to exhibit a copy of the complaint or notice upon which the decree of confirmation is based. Said complaint was filed April 4, 1931. 6. Copy of chancery docket in said cause No. 2073."

In addition to the records above mentioned, depositions of witnesses were introduced, and the deed by the trustee in bankruptcy to Armstrong, and other exhibits.

The chancellor entered a decree holding that J. Q. Armstrong and Bryan Armstrong were the owners of the land described, and that the attempted sale by the Collector of Revenue of said land for the alleged non-payment of state and county taxes for the year 1918 be canceled and annulled on account of fundamental and jurisdictional errors in the proceedings concerning the assessment, levy, collection and attempted sale, such jurisdictional errors being such as to deprive the collector of the power to sell, and that the alleged deed executed by George W. Neal, Land Commissioner of the State of Arkansas, to J. L. Craft be canceled and annulled as a cloud upon the title of J. Q. and Bryan Armstrong. The court, however, found that J. L. Craft was entitled to recover certain amounts and was entitled to a lien on the land for these amounts. The case is here on appeal.

The appellant objects to the pleading of appellees called bill of review. Whether it is such or not, the fact that it is named bill of review makes no difference, because we must look to the substance of a pleading rather than the name, and the pleading will be treated according to what its substance shows it to be regardless of what it is called. Moreover, pleadings under the code are liberally construed, and every reasonable intendment is indulged in behalf of the pleader. *Geyer* v. *Western Union Tel. Co.,* 192 Ark. 578, 93 S. W. 2d 360; *Holcomb* v. *American Surety Co.,* 184 Ark. 449, 42 S. W. 2d 765.

It is contended by appellees that the decree of confirmation was not a final decree because it recited: ''The court retains jurisdiction of this cause to make further and supplemental orders and decrees as shall be deemed proper and as the merits of the same shall warrant.'' Appellees cite authorities to sustain this contention.

One of the authorities cited is Freeman on Judgments, Vol. 1, 5th Edition, § 38. That is the section that discusses interlocutory decrees defined and classified.

But § 33 of the same volume provides: "A decree is none the less final because some future orders of the court may become necessary to carry it into effect; nor because some independent branch of the case is reserved for further consideration, or the disposition of the costs is not determined. A decree final in other respects is not interlocutory because it directs a taxation of costs; nor because, as in the case of a decree for the sale of mortgaged premises, subsequent proceedings under direction of the court are necessary to execute the decree. A judgment or decree which determines all the equities or the substantial merits of the case is final for purposes of appeal though further proceedings may be necessary in the execution of it or some incidental or dependent matter may still remain to be settled." See 34 C. J. p. 219, § 440.

It appears from the decree that all matters were settled on the merits, and we, therefore, think that the decree was a final decree, from which an appeal might have been taken.

Act 296 of the acts of 1929 in § 9, provides: "The decree of the court confirming the sale to the state shall operate as a complete bar against any and all persons who may thereafter claim said land in consequence of any informality or illegality in the proceedings; and the title to land shall be considered as confirmed and complete in the state forever, saving, however, to infants, persons of unsound mind, imprisoned beyond the seas, or out of the jurisdiction of the United States, the right to appear and contest the state's title to said land within one year after the disabilities may be removed. The owner of any lands embraced in the decree may within one year from its rendition have the same set aside in so far as it relates to the land of the petitioner by filing a verified motion that such person had no knowledge of the pendency of the suit, and setting up a meritorious defense to the complaint upon which the decree was rendered."

The complaint in this case recites that the decree of confirmation on its face shows that it was rendered November 27, 1933, and this suit was filed July 22, 1937;

whereas act 296 provides that the owner of any land embraced in the decree within one year from its rendition may have the decree set aside. Here it was more than three years after the rendition of the confirmation decree before this suit was filed. The evidence shows, however, that in 1910 this land was conveyed to J. R. Gregson, trustee, and that Gregson, in 1914, deeded the land to M. R. Rasico. In 1926, the land was deeded to T. S. Taylor and in 1930 Taylor conveyed the land to the Watson Investment Company, a corporation. Watson Investment Company, in December, 1933, filed a voluntary petition in bankruptcy and was adjudicated a bankrupt in January, 1934. J. Q. Lane was appointed trustee and directed to sell this land, and he sold the same to J. Q. Armstrong on November 9, 1934.

It, therefore, appears that at the time of the confirmation decree, this land was in the bankrupt court as the property of the Watson Investment Company. The appellees did not own these lands at the time of the forfeiture and did not own them at the time of the confirmation decree.

Attention is called to the case of *State* v. *Delinquent Lands,* 182 Ark. 648, 32 S. W. 2d 1061, and a number of other authorities. In the case referred to the court said: "It is manifest from the character of the decree provided by the act that the Legislature did not intend for the confirmation to be a bar against claimants of the land upon other grounds." There are a number of authorities to this effect, but this court has repeatedly held that confirmation of a tax sale is a bar to all defects arising from informalities or illegalities. But if the power to sell does not exist, the sale is void and the confirmation decree void. We have held that the confirmation decree cures all other defects.

There is no controversy in this case about the taxes being due, and no contention that they were paid, and there is no defect to which attention is called by appellee which shows a lack of power on the part of the state to sell.

The cases on the question involved here are numerous, and the authorities to which attention is called by counsel are many. It would extend this opinion unreasonably to undertake to discuss all these authorities.

We have reached the conclusion that the power to sell existed, that the taxes were due and not paid. The evidence tends to show that the appellees wrote and had others to write the State Land Commissioner after the sale of this land. None of these parties kept copies of the letters. If the letters were received by the commissioner the presumption is that he performed his duty, and in this case there is no evidence that he did not. There is nothing to show when these letters were written; that is, the evidence does not show that any application was made by appellees before the application made by Craft.

Appellees say that Craft is evidently a "mere tax speculator, not trying to get himself a home; because on the same day that he purchased tax title to this tract from the State, he also purchased for one dollar an acre three other tracts near Monette and Black Oak entirely disconnected from each other."

If this be true, it does not affect the validity of the sale. Where a speculator has purchased land at a tax sale or purchased from the state after the sale to it and after confirmation, and thereby deprives the original owner of his land, because, perhaps, the original owner was unable to pay the taxes, it is an unpleasant duty to have to confirm such sale; but the court has no authority to change the law. Moreover, in the instant case, the appellees were not the owners at the time of the forfeiture and sale, and only acquired title by purchase from the trustee in bankruptcy.

Having reached the conclusion that there was no lack of power to sell, the decree is reversed and the cause remanded with directions to dismiss appellees' complaint.

Mr. Justice BAKER did not participate in this decision.