70

5-4782                                     436 S.W. 2d 475

Opinion Delivered February 3, 1969

*Garner & Parker* for appellants.

*Franklin Wilder* for appellee.

FRANK HOLT, Justice.   Appellee brought suit against appellants alleging that she had sustained damages from the unauthorized use of her property by appellants.

Appellee owned a store building and rented a part of it as a meat market at $56 per week.   Shortly thereafter, on June 11, 1967, the tenant quit business and surrendered possession, neglecting to remove several meat boxes and other fixtures.   The appellants, as creditors of the lessee, secured a default judgment against the

lessee and on September 11, 1967 levied upon the equipment. The deputy sheriff, following appellants' instructions, posted a copy of the levy upon the front door of appellee's building.

Thereafter, appellee communicated to appellants her request that the fixtures be removed from her building. Appellants failed to comply with this request. In January 1968, appellee served upon appellants a three-day "notice to quit," pursuant to Ark. Stat. Ann. § 34-1503 (Repl. 1962). Upon appellants' continued failure to remove the equipment, the appellee then sued for immediate possession, $900 in damages for the current loss of use of her building, $200 for each additional month of alleged misuse, and "any other damage which this plaintiff might sustain by reason of the unlawful detainer of these defendants, and for all other proper relief." Before trial, appellants removed the equipment. Thus, the only issue at the trial was the question of damages. The court, sitting as a jury, found for appellee and assessed her damages in the amount of $400. The court credited, or allowed the appellants sixty days for "action" from the date of the levy of execution in September. Damages were then awarded for a period of four months, i.e., from November 1967 to March 1968, the month appellants removed the fixtures. From that judgment the appellants have appealed.

For reversal appellants contend that an unlawful detainer action is based upon a contract and will not lie except where the relation of landlord and tenant exists between the parties, and further, that damages are not recoverable in an unlawful detainer action.

This court has consistently held that an action of unlawful detainer presupposes the relation of landlord and tenant, and such action will not lie except where that relationship exists. *Hilliard* v. *Yim,* 207 Ark. 161, 179 S.W. 2d 456 (1944); *Miller* v. *Plummer,* 105 Ark. 630, 152 S.W. 288 (1912). However, damages for un-

lawful detainer can be recovered. Ark. Stat. Ann. § 34-1516 (Repl. 1962) permits a court or jury to assess damages in a forcible entry or an unlawful detainer suit.

The fact that appellee used the words ''unlawful detainer'' in her complaint is not controlling as to that type of action and we do not construe her pleading as being an unlawful detainer action. We have stated many times that courts must look to the substances of a pleading and it will be interpreted according to its substance rather than its form. Under our civil code, pleadings are liberally construed and every reasonable intendment is indulged favorable to the pleader. *Myers* v. *Majors,* 242 Ark. 326, 413 S.W. 2d 661; *Stroud* v. *M. M. Barksdale Lbr. Co.,* 229 Ark. 111, 313 S.W. 2d 376; *Craft* v. *Armstrong,* 200 Ark. 681, 141 S.W. 2d 39. Consequently, appellee's complaint could properly be considered by the trial court as merely a suit for damages.

Appellants further assert that: ''A judgment creditor upon the levy of the goods of his debtor acquires no interest in said goods.'' It is argued that an officer who levies execution on personal property is not only held to be entitled to possession thereof as against the judgment debtor, but is generally presumed to be rightfully in possession of the goods taken in execution, citing 30 Am. Jur. 2d § 267. Therefore, it is contended that since a judgment creditor does not acquire the ownership of goods upon a mere levy of execution, without doing more, then if anyone is responsible for the loss of use of appellee's building, it is the sheriff. We think appellants' argument is without merit in the case at bar since their actions involved more than the mere levy of an execution.

To support their contention that the execution officer is the party responsible for damages, appellants cite *Frizzell* v. *Duffer,* 58 Ark. 612, 24 S.W. 1111 (1894). There plaintiff had rented his house with the under-

standing that the tenant agreed to vacate upon one day's notice. A deputy constable, under a writ of attachment issued against the tenant, levied upon certain chattels situated in the house. The deputy obtained the keys by an agreement with the tenant and retained possession for some weeks after he had received notice to surrender the house to plaintiff. We said that the holding of the house after receiving notice to vacate was a trespass and that the constable, being responsible for his deputy's misconduct, was liable for damages to the owner of the house in an amount which would equal the fair rental value of the house "during the time of the unlawful detention." We think the reasoning in this case can fairly be applied to the case at bar. An execution creditor has large control in the management of the levy of an execution and the levying official is, sometimes, regarded as an agent. 30 Am. Jur. 2d § 223.

In the instant case it appears that the levying official was at all times acting at the direction of appellants. The appellants had the execution issued and levied; the sheriff served it on the judgment debtor and then proceeded to post a copy on the front door of appellee's building as instructed by appellants. Subsequently, there were "calls" received by the levying official about "selling" the fixtures and "a call about rental property." These calls were referred to appellants. According to this official, he looked to appellants for his instructions before taking any action. About four months after the idle levy upon the fixtures, it was discovered that the papers had not been filed in the circuit clerk's office because the sheriff's fee had inadvertently not been paid. This was corrected immediately.

Appellee testified that she felt she could not touch or remove the property in her building since a copy of the execution papers, itemizing the fixtures levied upon, was posted on the front door. Therefore, she could not rent her building and rental was "turned down twice

because of it." There was evidence that appellee made demands upon appellants for payment of rent and removal of the equipment from her building. She was told that the fixtures would be removed several months before the actual removal by appellants. One explanation was that they had "no place to move it." Appellee rented her building for $500 per month when the appellants moved the equipment in March.

There being substantial evidence to support the trial court's action, as a trier of the facts, the judgment is affirmed.

Fogleman, J., dissents.

John A. Fogleman, Justice. I disagree with that part of the majority opinion dealing with appellants' liability for the action of the levying officer's acts. Certainly it is beyond dispute that an execution creditor acquires no interest in the property upon which the execution is levied. The basis of the action of the majority on this facet of the case is not clear to me, but it seems to rest in part upon a suggestion that the levying officer was the agent of the execution creditor. I do not feel that such a holding is justified. I do feel that this results in a dangerous and unwarranted precedent. The evidence upon which this holding is premised is the deputy sheriff's testimony that appellants' attorney directed him to post the notice of levy upon the front door of appellee's building, appellee's statement that she told appellants' attorney to "do something about it," that he promised to do something several months before any action was taken, that appellants failed to remove the property levied upon from her building, that appellants failed to remove the property after she caused a "3-day notice to quit" to be served upon appellants, one of appellants was admitted to the premises by appellee when he came out and wanted to take inventory of the property upon which the levy had been made, and the first levy was not returned by the sheriff to the clerk

because the sheriff's fee had not been paid. These circumstances combined are insufficient to evidence an agency, in my opinion.

There is no evidence that appellants or their attorney took any action to control the manner of the levy of the execution or the disposition of the property after the levy. There was nothing in the notice of levy posted upon appellee's building that purported to do anything other than to give notice that the particular personal property had been levied upon and was in the custody of the sheriff. Until the sale the property was in the custody of the sheriff and it was his obligation and duty to take care of it. 30 Am. Jur. 2d 601, Executions, § 266. The execution creditor had no right to its possession. 30 Am. Jur. 2d 602, Executions, § 267. The most that can be said is that the execution creditor knew that the property was in appellee's building and failed to instruct the sheriff to remove it. I cannot see how liability of an execution creditor can be premised on this.

I would reverse the judgment and dismiss the case.